Raymond S. MARTINEZ, Appellant,

v.

Yolanda MOLINAR, Appellee.

No. 08–96–00098–CV.

Court of Appeals of Texas,
El Paso.

Aug. 7, 1997.

J. K. 'Rusty' Wall, Law Office of J. K. Rusty Wall, Midland, for Appellant.

Dan Morales, Attorney General, Rhonda A. Pressley, Assistant Attorney General, Child Support Litigation Division, Austin, Lilly A. Plummer, Odessa, for Appellee.

Before LARSEN, McCLURE and CHEW, JJ.

## OPINION

McCLURE, Justice.

This is an appeal from a judgment in a suit to establish the parent-child relationship in which orders for conservatorship and support were entered. We affirm the judgment as reformed.

## PROCEDURAL HISTORY

In 1994, the Office of the Attorney General of Texas, Child Support Litigation Division, filed suit to establish the paternity of Sabrina Alexis Martinez, who was born in Midland, Texas on January 9, 1990. In his original answer, Raymond (Sam) Martinez, Appellant, denied paternity. Parentage testing established a 99.76 percent probability of his paternity. Martinez then amended his pleadings, admitted paternity, and filed a cross-petition seeking managing conservatorship of his daughter. Specifically, he sought sole managing conservatorship or, in the alternative, joint managing conservatorship with him having the right to establish the primary residence of the child.

Following a bench trial on November 1, 1995, the court appointed Yolanda Molinar, Appellee, sole managing conservator, entered a standard possession order and set child support. During a December 29 hearing on the form of the judgment to be entered, Martinez unsuccessfully sought to reopen the evidence as to the determination of child support. At issue, in this appeal, are the trial court's failure to file separate findings of fact and conclusions of law, its refusal to appoint the parents joint managing conservators, and its denial of the motion to reopen the evidence. The Office of the Attorney General, also a designated Appellee, brings a cross-point of error seeking reformation of the judgment to include a finding of paternity.

## FAILURE TO MAKE FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ In Point of Error No. One, Martinez argues that the judgment must be reversed because the trial court failed to issue separate written findings of fact and conclusions of law. We disagree. Martinez timely filed both an initial and reminder request for findings pursuant to TEX.R.CIV.P. 296 and 297. As a general rule, the failure of the trial court to file findings of fact constitutes error where the complaining party has complied with the requisite rules to preserve error. *Wagner v. Riske*, 142 Tex. 337, 342, 178 S.W.2d 117, 119 (1944); *FDIC v. Morris,*

782 S.W.2d 521, 523 (Tex.App.—Dallas 1989, no writ). There is a presumption of harmful error unless the contrary appears on the face of the record. *City of Los Fresnos v. Gonzalez,* 830 S.W.2d 627 (Tex.App.—Corpus Christi 1992, no writ). Thus, the failure to make findings does not compel reversal if the record before the appellate court affirmatively demonstrates that the complaining party suffered no harm. *Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 256 (Tex.1984). Where there is only one theory of recovery or defense pleaded or raised by the evidence, there is no demonstration of injury. *Guzman v. Guzman,* 827 S.W.2d 445 (Tex.App.—Corpus Christi 1992, writ denied); *Vickery v. Texas Carpet Co., Inc.,* 792 S.W.2d 759 (Tex.App.—Houston [14th Dist.] 1990, writ denied). *Accord, Landbase, Inc. v. T.E.C.,* 885 S.W.2d 499, 501–02 (Tex. App.—San Antonio 1994, writ denied) (failure to file findings and conclusions harmless where the basis for the court's ruling was apparent from the record).

▬▬▬ The test for determining whether the complainant has suffered harm is whether the circumstances of the case would require an appellant to guess the reason or reasons that the judge has ruled against it. *Sheldon Pollack Corp. v. Pioneer Concrete,* 765 S.W.2d 843, 845 (Tex.App.—Dallas 1989, writ denied); *Fraser v. Goldberg,* 552 S.W.2d 592, 594 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.). Any guessing game here is eliminated by inclusion of the court's findings as recitals in the judgment, as opposed to separate findings and conclusions. This is an acceptable practice under the rules since it serves the underlying purpose of Rule 296. *Leon Ltd. v. Albuquerque Commons Partnership,* 862 S.W.2d 693, 703 (Tex.App.—El Paso 1993, no writ), *citing Farr v. Sun World Savings Ass'n,* 810 S.W.2d 294, 298 (Tex.

App.—El Paso 1991, no writ). The issue, then, is whether there are disputed facts to be resolved. *FDIC v. Morris,* 782 S.W.2d at 523.

We conclude that the order of the trial court contains findings that properly identify the basis of the court's ruling. Although recognizing that the 1995 amendments to the Texas Family Code [1] provide for a rebuttable presumption that joint managing conservatorship is in a child's best interest, the court specifically found that the presumption was rebutted "because such appointment of the biological parents as joint managing conservators would significantly impair Sabrina Alexis Martinez's physical health and emotional development." [2] Judging by Martinez's argument in Point of Error No. Two, he thoroughly understands the basis of the court's order, has not been required to guess the reason or reasons supporting the trial court's decision, and was not prevented from properly presenting his case on appeal. Point of Error No. One is overruled.

## PRESUMPTION OF JOINT MANAGING CONSERVATORSHIP

In Point of Error No. Two, Martinez argues that the trial court erred by failing to appoint the parties as joint managing conservators of Sabrina. The Family Code recites that the public policy of this State is to assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child; to provide a stable environment for the child; and to encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage. Tex.Fam.Code Ann. § 153.001(a)(Vernon 1996). The best interest of the child shall always be the pri-

---

1. Tex.Fam.Code Ann. § 153.131(b), enacted by 74th Leg., R.S. (1995), ch. 20, § 1, eff. Apr. 20, 1995; amended by 74th Leg., R.S. (1995), ch. 751, § 32, eff. Sept. 1, 1995 ("applies to a pending suit affecting the parent-child relationship without regard to whether the suit was commenced before, on, or after the effective date of this Act.")

2. There are also numerous findings concerning Martinez's income and application of the child support guidelines to that income. However,

Martinez does not complain of the sufficiency of the evidence to support these findings nor that the court misapplied the guidelines. Instead, his only complaint relating to child support is the trial court's refusal to reopen the evidence. Further, the record reflects that there was no request for findings of fact and conclusions of law pursuant to either Tex.Fam.Code Ann. § 154.130 or § 153.258 (Vernon 1996). As a result, *Tenery v. Tenery* 932 S.W.2d 29 (Tex.1996) is inapplicable.

mary consideration of the court in determining conservatorship and possession. Tex. Fam.Code Ann. § 153.002 (Vernon 1996). The trial court shall consider the qualifications of the parties without regard to their marital status or to the gender of the party or the child in determining which party to appoint as sole managing conservator, whether to appoint joint managing conservators, and the terms and conditions of conservatorship. Tex.Fam.Code Ann. § 153.003 (Vernon 1996). The trial court may appoint a sole managing conservator or joint managing conservators. Tex.Fam.Code Ann. § 153.005(a)(Vernon 1996). Section 153.131(b) creates a rebuttable presumption that the appointment of the parents as joint managing conservators is in the best interest of the child. Tex.Fam.Code Ann. § 153.131(b) (Vernon 1996). However, in determining whether joint managing conservatorship is in the best interest of the child, the court is to consider the following factors:

- whether the physical, psychological, or emotional needs and development of the child will benefit from the appointment of joint managing conservators;
- the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;
- whether each parent can encourage and accept a positive relationship between the child and the other parent;
- whether both parents participated in child rearing before the filing of the suit;
- the geographical proximity of the parents' residences;
- if the child is 12 years of age or older, the child's preference, if any, regarding the appointment of joint managing conservators; and
- any other relevant factor.

Tex.Fam.Code Ann. § 153.134 (Vernon 1996).

The record reveals that the parties could not agree on marriage or commitment, whether Martinez was Sabrina's father, the amount of child support, the visitation schedule, the needs of the child, or the need for a civil relationship for the child's sake. The evidence also shows that neither party could encourage and accept a positive relationship between the child and the other parent. Evidently, Martinez harbored some belief that he and Molinar could not cooperate or work together for Sabrina's benefit since he sought to be appointed sole managing conservator. Joint managing conservatorship was an alternative and secondary request.

At trial, Martinez claimed that early on, he did not know whether he was Sabrina's father, yet the record reflects that he did not object to her name being stated as "Martinez" on the birth certificate. He also participated in Sabrina's baptism, announced himself as her father during the ceremony, and signed the baptismal records.[3] The couple separated when Sabrina was six months' old. Molinar testified that a paternity action filed in 1992 was dismissed because Martinez threatened a custody suit.[4] When she asked him if he had been served in connection with the 1994 suit, Martinez "threatened me to file for custody and told me that he was going to take her, that he was never going to give me a penny." Indeed, Martinez did not deny his efforts to avoid paying support. Even after the parentage testing established his paternity in November of 1994, Martinez paid no support in November or December of 1994 or January of 1995. An order entered in February 1995 set child support and provided for wage withholding, but despite the fact that Martinez recognized that the support was not yet being withheld, he paid no support in February, March, or April of 1995. Instead of paying the arrearage to Molinar, he deposited the money into his attorney's trust account until the conclusion of the trial. Further, when asked why he paid a few medical care providers directly rather than giving money directly to Molinar, Martinez answered, "I've never believed in doing that."

---

**3.** Sabrina was baptized when she was three months old.

**4.** Martinez testified that when Sabrina was three years old, in January of 1993, he "started trying to get more contact with her." These efforts would have come after the first paternity suit was filed.

The record also reflects that Martinez has a son from a prior non-marital relationship. It was necessary for the mother of that child to bring a paternity action against him before he assumed financial responsibility. As for his relationship with his son, Martinez admitted that he had not visited with him in two or three years, "maybe a little longer," and that he had not once been to visit the boy's school. Thus, there is evidence by which the trial court could determine that Sabrina's physical health and emotional development would be impaired by appointing as a joint managing conservator a parent who had not taken an active interest in the child in her early years, whose relationship with the child was relatively recent,[5] whose relationship with another child was strained at best, and whose motivation for seeking custody was clearly at issue.

■■■ The matter of determining who should be appointed managing conservator of Sabrina Alexis Martinez was addressed to the sound discretion of the trial judge as the trier of fact. *See Altamirano v. Altamirano*, 591 S.W.2d 336, 337 (Tex.Civ.App.—Corpus Christi 1979, no writ). The trial judge was in a better position to determine what will be in the best interest of Sabrina since he faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent. *Id.* at 338. His judgment will not be disturbed on appeal unless there has been a clear abuse of discretion. *Id., citing Herrera v. Herrera*, 409 S.W.2d 395 (Tex.1966); *Mumma v. Aguirre*, 364 S.W.2d 220 (Tex. 1963); *Wilkinson v. Evans*, 515 S.W.2d 734 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.); *Tye v. Tye*, 532 S.W.2d 124 (Tex.Civ.App.—

Corpus Christi 1975, no writ). The test for abuse of discretion in custody matters is whether the trial court acted without reference to any guiding rules or principles. *Graves v. Graves*, 916 S.W.2d 65, 68 (Tex. App.—Houston [1st Dist.] 1996, n.w.h.), *citing Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *Mai v. Mai*, 853 S.W.2d 615, 618 (Tex.App.—Houston [1st Dist.] 1993, no writ).

■■ On the record before us, we cannot say that the trial judge abused his discretion when he found, pursuant to the pleadings, evidence, and statements of counsel, that it would be in Sabrina's best interest for Molinar to be appointed sole managing conservator. *See Altamirano*, 591 S.W.2d at 338, *citing Fergus v. Fergus*, 547 S.W.2d 51 (Tex. Civ.App.—Eastland 1977, no writ); *Johnson v. Johnson*, 536 S.W.2d 620 (Tex.Civ.App.— Tyler 1976, no writ); *Tye*, 532 S.W.2d at 124; *Adams v. Adams*, 519 S.W.2d 502 (Tex.Civ. App.—El Paso 1975, no writ). Appellant's Point of Error No. Two is overruled.

## REQUEST TO REOPEN EVIDENCE

In Point of Error No. Three, Martinez complains that the trial court abused its discretion in disallowing his request to reopen the evidence concerning the issue of child support. Trial on the merits was conducted on November 1, 1995. The trial court announced its ruling in a letter dated November 3. Martinez and Molinar disagreed on the precise amount of child support that the trial court had ordered.[6] Martinez moved to enter judgment, advising the court of the disagreement and attaching a proposed judgment with the income findings and amount of

---

5. Given Martinez's testimony that he did not attempt to have a great deal of contact with Sabrina until she was three years old, he had a track record of less than three years at the time of the trial. He had effectively missed out on the first half of her life. While we recognize that Molinar interfered on occasion with his visitation because of his failure to contribute to her support, Martinez testified that he did not visit because of the hostile relationship between the two of them and his desire to avoid a "confrontation." The record does not reflect that Martinez sought any legal recourse for either custody or visitation until after the paternity suit was filed and the parentage tests were completed.

6. In determining the amount of child support Appellant was required to pay, the evidence which was admitted at the November 1, 1995 trial consisted of: Appellant's W–2 wage statements for the years 1991, 1992, and 1994; Appellant's pay stubs for December 26, 1994 through September 25, 1995; and Appellant's testimony that his "base salary" of $818.50 bi-weekly had not changed appreciably over the preceding four to five years, but was supplemented by overtime pay that varied weekly and seasonally.

child support left blank. At the hearing on the motion to enter, the trial court denied Martinez's oral request to admit additional evidence relating to his income for the year. This additional evidence was allegedly an updated pay stub and a monthly expense sheet. We are unable to determine whether the additional evidence was conclusive or decisive because Martinez did not, by bill or exception or otherwise, make a record of the evidence for appeal.

 Whenever testimony is erroneously excluded by ruling of the trial court, the offering party must make a bill of exceptions in order to preserve error on appeal. *Ramirez v. Ramirez*, 873 S.W.2d 735, 741 (Tex.App.—El Paso 1994, no writ), *citing McInnes v. Yamaha Motor Corp., U.S.A.*, 673 S.W.2d 185, 187 (Tex.1984), *cert. denied*, 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985); *see also Texas Elec. Utilities Co. v. Rocha*, 762 S.W.2d 275, 277 (Tex.App.—El Paso 1988, writ denied). Because the evidence is not part of the record, we cannot determine whether the trial court erred in refusing to reopen the case. *See In re the Estate of Johnson*, 886 S.W.2d 869, 873 (Tex. App.—Beaumont 1994, no writ)(a challenge to court's refusal to reopen overruled because no bill of exception was perfected; this point is not reviewable in this state of the record); *Walton Neon Co. Inc. v. Travel–Tex Corp.*, 482 S.W.2d 934, 937 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.)(it was appellant's duty, if error was to be preserved, to offer to call witness to the stand for the purpose of making a bill of exception); *see also Russell v. Russell*, 443 S.W.2d 569 (Tex.Civ.App.—El Paso 1969, no writ); *Dorn v. Cartwright*, 392 S.W.2d 181 (Tex.Civ. App.—Dallas 1965, writ ref'd. n.r.e.); *McRoy v. Riverlake Country Club*, 426 S.W.2d 299, 305 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.). ("However, in this case we cannot reach the question whether there was an abuse of discretion in the court's refusal. Appellant did not make the showing required on motion to reopen."). Because its absence from the record precludes a decision as to whether the exclusion of this evidence was reasonably likely and probably did cause rendition of an improper judgment, the judgment cannot be reversed on this ground.

Martinez attempts to justify his failure to make a bill of exception by stating that he did not wish to risk arousing the anger of the trial court. If fear of vexing the trial court excuses the failure to preserve error, the rules requiring preservation would be eviscerated. Point of Error No. Three is overruled.

## FINDING OF PATERNITY

 By cross-point of error, the Office of the Attorney General requests that we reform the final judgment to include a finding of paternity and to order that the parent-child relationship is established between Raymond S. Martinez and Sabrina Alexis Martinez. The judgment contains a finding that "the biological parents of the minor child have been previously established in a Family Code Title 4 action." However, our review of the record reflects that the prior order was designated a Pretrial Order in Paternity Suit. By its terms, the court found that at least 99 percent of the male population is excluded from the possibility of being Sabrina's father, ordered the burden of proof shifted to Martinez to show that he is not Sabrina's biological father, and appointed Molinar as the temporary managing conservator. The order was evidently entered in compliance with Tex.Fam.Code Ann. § 160.105 (Vernon 1996) which requires a pretrial conference in a parentage suit. The order does not contain a declaration that Martinez is Sabrina's biological father. Section 160.006 mandates that we grant the cross-point:

**§ 160.006. Final Order Regarding Parentage**

(a) On a verdict of the jury, or on a finding of the court if there is no jury, the court shall render a final order declaring whether an alleged parent is the biological parent of the child.

(b) The effect of an order declaring that an alleged parent is the biological parent of the child is to confirm or create the parent-child relationship between the parent and the child for all purposes.

(c) If parentage is established, the order shall state the name of the child.

After the pre-trial conference, Martinez accepted the validity of the parentage testing and filed of record an affidavit admitting paternity. We do not believe that either the pre-trial order or the affidavit comply with Section 160.006. Accordingly, we reform the judgment to include a finding that Raymond S. Martinez is the biological father of Sabrina Alexis Martinez and that the parent-child relationship is established between them.

Having overruled all of Martinez's points of error, we affirm the judgment of the trial court as reformed.