Opinion filed January 13,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00176-CV

                                                    __________

 

                            IN THE INTEREST OF J.A.S., A CHILD



 

                                   On
Appeal from the 220th District Court

                                                        Comanche
County, Texas

                                            Trial Court Cause
No. CCFM-05-09205



 

M
E M O R A N D U M   O P I N I O N

Megan
Stewart Brock appeals from the trial court’s order granting Troy Keith Stone’s
petition to modify the parent-child relationship.  We affirm.  

I.  Background
Facts

            Brock
and Stone were previously married and are the parents of J.A.S.  When they were
divorced in 2002, the trial court appointed Brock sole managing conservator of
J.A.S. and Stone possessory conservator and ordered Stone to pay child support. 
In 2004, the parties agreed to modify the possession order to require Stone’s
possession to be supervised for a period of time and to require the parties to
attend counseling.

In
2005, Brock filed a petition to modify the parent-child relationship and
requested that Stone’s possession of J.A.S. be continuously supervised.  Stone responded
by filing his own petition to modify.  He requested that he be given the right
to participate in all future decisions concerning J.A.S.’s mental health care; that
for the next two years J.A.S. see only the two counselors he was currently
seeing; and that J.A.S.’s residence be restricted to Comanche County, Palo
Pinto County, or within fifty miles of Palo Pinto County.  Stone later amended
his petition to also seek appointment as joint managing conservator with the exclusive
right to establish J.A.S.’s residence and domicile.  Brock amended her petition
to request further changes to the conditions of Stone’s visitation and to
increase Stone’s child support payments.  Brock also filed a motion for
enforcement, claiming that Stone was in arrears in his child support payments. 
The trial court considered both parties’ motions to modify and Brock’s motion
for enforcement in a bench trial.

Brock
and Stone were divorced in 2002.  Brock married Monty Stewart in 2003.  The two
separated in 2005 and were divorced in 2006.  Brock then married Billie Brock
in 2006.  Stone married Julie Stone a year before trial.  Both couples were still
married and were residing in Mineral Wells at the time of the trial. 

Brock
was critical of Stone’s parenting skills.  She testified that he did not care
for J.A.S. properly during his periods of possession.  In particular, she
claimed that Stone did not ensure that J.A.S. had everything necessary for
school, that Stone brought J.A.S. to school sick and without his homework
completed, that Stone failed to properly dispense medication when J.A.S. was
sick, and that Stone had not facilitated J.A.S.’s involvement in
extracurricular activities.  Brock claimed that J.A.S. had returned from
Stone’s possession with bruises, though she did not accuse Stone of causing
them.  Brock also claimed that Stone was not current on his child support.  Stone
testified that he did not know about many of the extracurricular activities that
Brock claimed he prevented J.A.S. from attending.  Stone agreed that he did not pay child support regularly.  He also admitted
that he had not filed an income tax return for several years, but claimed that
he had filed for extensions.

Stone
was critical of Brock’s honesty.  He contended that Brock filed fraudulent
income tax returns for 2006 and 2007 by misrepresenting her marital status and,
as a result, improperly received a tax credit.  Brock denied committing fraud. 
She testified that she gave all of her financial information to a tax return
preparer and that the preparer filled out the returns.  Brock admitted that,
before her marriage to Stone, she had been convicted of felony theft in Lubbock
and embezzlement and conspiracy in New Mexico and that she had made false
representations of fact in a petition for name change.  Brock’s ex-husband, Stewart, testified and was also critical of her
veracity.  He claimed that, during their marriage, she stole approximately
$243,000 from him.  Their divorce decree ordered Brock to repay him over
$38,000, but she discharged this debt through bankruptcy.  Stewart also claimed
that, during their marriage, Brock obtained six or seven credit cards in his
name but without his knowledge and that he was still paying the balances on
those accounts.  Stewart testified that, when he first met Brock, she claimed
that J.A.S. was afraid of Stone and that the two were hiding from him.  Brock
told Stewart that Stone was abusive toward her and J.A.S. and that J.A.S. was
afraid of Stone.  She told him that J.A.S. would get down on the floorboard of
the car if he thought Stone was coming.  But when Stewart first saw Stone and
J.A.S. together, he recalled that J.A.S. jumped into Stone’s arms.  Brock
denied Stewart’s accusations.

Stone
also challenged Brock’s stability.  Brock admitted to having moved six times
since she separated from Stewart.  She also has two
daughters, but their fathers have custody and have raised them.  Stewart
testified that, after he and Brock separated, he was working on his home
computer. The website adultfriendfinder.com flashed up on the screen.  This indicated
to him that it had been accessed from his computer.  Curious, he found
provocative photographs, which he identified as being of Brock, posted on the
website. Over Brock’s objection, printouts of these photographs were admitted
into evidence.  Brock denied ever posting on adultfriendfinder.com and
maintained that the photographs were not of her.

Both parties called independent witnesses to support their
positions.  Constance Marie Rafailedes, a professional counselor, began counseling
J.A.S. in 2003. She testified that J.A.S. was suffering from anxiety because he
did not want to visit Stone.  She reported Stone to Child Protective Services
for physical abuse after J.A.S. claimed that he was spanked and punched.  She
said that J.A.S. wanted to stay with Brock, and she felt that it would be in J.A.S.’s
best interest for Brock to remain the primary conservator.

Judy Fowler is a child and family therapist.  In 2003, she
was ordered to supervise Stone’s visits with J.A.S. and to provide Brock and
Stone with parental consultation.  She testified that, at first, J.A.S. was
anxious about seeing Stone.  She stated that this anxiety was caused by an
estrangement after Stone had been unable to locate Brock and J.A.S. for several
months.  However, Stone and J.A.S. soon regained a loving and comfortable
relationship.  Fowler remembered one incident in 2004 in which Stone spanked
J.A.S. with a paddle.  She counseled with Stone, and he agreed not to do that
again.  Fowler also remembered an incident in which J.A.S. complained about
being hit by Julie Stone’s nephew.  Fowler met with the two boys and resolved the
matter to her satisfaction.  Fowler said that, at some point in time, Brock had
been trying to drive a wedge in the relationship between Stone and J.A.S. 
Fowler testified that she would not have any reservation about designating either
parent primary conservator.

Several witnesses testified that Brock was a good mother to
J.A.S.  A number of residents from Mineral Wells testified as to Stone’s good
character and described him as a good father to J.A.S. and his other children.

The
trial court found that Stone was in arrears on his child support payments but
that it was not contemptable.  The trial court also granted Stone’s petition to
modify the parent-child relationship and gave him the exclusive right to
establish J.A.S.’s residence.

II. 
Issues

            Brock
challenges the trial court’s order with two issues.  First, Brock argues that
the trial court abused its discretion by admitting photographs into evidence
without proper authentication.  Second, she contends that the trial court
abused its discretion when it found that Stone’s requested modification was in
the best interest of J.A.S.

III. 
Authentication of the Photographs

            Brock
contends that the trial court abused its discretion by admitting into evidence photographs
Stewart testified were of her and were posted on an adult website, adultfriendfinder.com. 
Specifically, she contends that Stone did not properly authenticate the
photographs as he provided no evidence that they were ever posted on the
website.

The
requirement of authentication or identification as a condition precedent to
admissibility is satisfied by evidence sufficient to support a finding that the
matter in question is what its proponent claims.  Tex. R. Evid. 901(a).  Testimony that a photograph is what it
purports to be is sufficient to authenticate the photograph, while the accuracy
of that testimony is a question for the factfinder.  See Tex. R. Evid. 901(b); Davidson v.
Great Nat’l Life Ins. Co., 737 S.W.2d 312, 314-15 (Tex. 1987).  We review a
trial court’s decision to admit evidence for an abuse of discretion.  City
of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex. 1995).  

Stone
argues that Brock failed to preserve this issue because she did not object at
trial to the lack of evidence that the photos were posted on adultfriendfinder.com. 
See Tex. R. Evid. 103(a)(1). 
When Stone offered the photographs, Brock made the following objection:

            [BROCK’S
COUNSEL]:  I will object.  I don’t think they’re properly authenticated.  He
certainly hasn’t identified that he took the pictures, that they are -- truly
and accurately represent what they appear to represent.  None of the photos
have a picture of a face in them at all.

 

            THE
COURT: I haven’t seen them.

 

            [BROCK’S
COUNSEL]:  I know you haven’t, but I -- Mr. Stewart, do any of these pictures
have a full shot of a someone’s face in them?

 

            . . . .

 

            THE
WITNESS:  No.

 

            THE
COURT:  How do you know they’re her?

 

            THE
WITNESS:  Tell by looking at her body.

 

            THE
COURT:  Okay.

 

            THE
WITNESS:  Part of the jewelry she’s wearing she had when we were married.

 

            THE
COURT:  Okay.  I’ll admit them.

 

The photos show
only the lower portion of the subject’s face.  Brock’s complaint fairly advised
the court of her concern that the photos were not of her.  Brock did not,
however, complain that, even if they were of her, Stone had not proven that the
pictures were posted on adultfriendfinder.com.  Brock
argues, nonetheless, that her objection was sufficient to challenge not only the
authentication of the pictures as being of her but also their authentication as
pictures that were posted on an adult website.  We disagree.  A party may not
enlarge a ground of error or an argument to include a claim not raised before
the trial court.  In re E.A.C., 162 S.W.3d 438, 445 (Tex. App.—Dallas
2005, no pet.).  Brock challenged the accuracy of the photos, and Stewart
responded.  Stewart explained how he became aware of the photos, and he was prepared
to explain how he knew Brock had accessed his computer.  However, he was not
called upon to do so because Brock’s objection was limited to identification.  Brock
cannot complain now that the trial court abused its discretion by not granting
an objection it was not presented with or by not requiring additional
authentication evidence to answer a challenge she did not raise.  The trial
court had sufficient evidence upon which to conclude that Brock was the subject
in the photographs and, therefore, did not abuse its discretion by admitting
them.  Issue One is overruled.

IV.  Best Interest of J.A.S.

Brock
next contends that the trial court abused its discretion when it found that Stone’s
requested modification was in the best interest of J.A.S.  In her reply brief, Brock also argues that there was
insufficient evidence that the circumstances of the child, the conservator, or another
party affected by the order have materially and substantially changed.  Because
this latter issue was not raised in her original brief, it has been waived.  Tex. R. App. P. 38.3.   

We
review a trial court’s decision on custody, control, possession, and visitation
matters for abuse of discretion, and we reverse the trial court’s order only if
we determine from reviewing the record as a whole that the trial court abused
its discretion.  Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex.
1982).  A trial court abuses its discretion only if it acts arbitrarily or
unreasonably, without reference to any guiding rules or principles.  Owens-Corning
Fiberglass Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).   

Under
an abuse of discretion standard, legal and factual sufficiency challenges to
the evidence are not independent grounds of error but are relevant factors in
assessing whether the trial court abused its discretion.  Child v. Leverton,
210 S.W.3d 694, 696 (Tex. App.—Eastland 2006, no pet.).  Because we apply an
abuse of discretion standard to a modification suit, the traditional
sufficiency standards of review overlap the abuse of discretion standard, and
appellate courts apply a hybrid analysis.  Echols v. Olivarez, 85 S.W.3d
475, 476 (Tex. App.—Austin 2002, no pet.); In re D.S., 76 S.W.3d 512,
516 (Tex. App.—Houston [14th Dist.] 2002, no pet.).  Once it has been
determined that the abuse of discretion standard applies, an appellate court
engages in a two-pronged inquiry:  (1) whether the trial court had sufficient
information on which to exercise its discretion and (2) whether the trial court
erred in its application of discretion.  Child, 210 S.W.3d at 696.  The
traditional sufficiency review comes into play with regard to the first
question; however, the inquiry does not end there.  Id.  The appellate
court then proceeds to determine whether, based on the evidence, the trial
court made a reasonable decision.  Id.  

In
a legal sufficiency review, we view the evidence in a light favorable to the
finding, crediting favorable evidence if a reasonable factfinder could do so
and disregarding contrary evidence unless a reasonable factfinder could not.  City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  The evidence is
legally sufficient if it would enable reasonable and fair-minded people to
reach the verdict under review.  Id. at 827-28.  We may sustain a
no-evidence challenge only when (1) the record discloses a complete absence of
evidence of a vital fact, (2) the court is barred by rules of law or evidence
from giving weight to the only evidence offered to prove a vital fact, (3) the
only evidence offered to prove a vital fact is no more than a mere scintilla,
or (4) the evidence conclusively establishes the opposite of a vital fact.  Id.
at 810.  In reviewing the factual sufficiency of the evidence, we examine all of the evidence and set aside a finding
only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986).  

The best interest of the child is the primary consideration
in determining issues of conservatorship.  Tex. Fam. Code Ann.
§ 153.002 (Vernon 2008); In re V.L.K., 24
S.W.3d 338, 342 (Tex. 2000).  Because the trial court faces the parties,
observes their demeanor, and has an opportunity to evaluate the claims made by
each parent, the trial court has wide latitude in determining the child’s best
interest. Gillespie, 644 S.W.2d at 451; Martinez v. Molinar, 953
S.W.2d 399, 403 (Tex. App.—El Paso 1997, no writ). When addressing
conservatorship issues, courts may use the nonexhaustive list of Holley
factors to determine the child’s best interest.  See Holley v. Adams,
544 S.W.2d 367, 371-72 (Tex. 1976).  The Holley factors include the
following: (1) the desires of the child; (2) the emotional and physical needs
of the child now and in the future; (3) the emotional and physical danger
to the child now and in the future; (4) parental abilities of the individuals
involved; (5) programs available to those individuals to promote the best
interest of the child; (6) plans for the child by these individuals; (7)
stability of the home or proposed placement; (8) acts or omissions of the
parent that may indicate that the existing parent-child relationship is not
proper; and (9) any excuse for the acts or omissions of the parent.  Holley,
544 S.W.2d at 371-72.  

We have previously summarized the key evidence developed
during the trial.  Brock highlights the evidence favoring her selection as
primary conservator, and she challenges the trial court’s consideration of the
provocative photographs Stewart produced.  Brock argues that a parent’s sexual
conduct is irrelevant to a best interest determination absent proof that the
child was aware of the conduct, and she relies upon decisions such as Wolfe
v. Wolfe, 918 S.W.2d 533, 540 (Tex. App.—El Paso 1996, writ den’d), for
this proposition.  Because there was no showing that J.A.S. was aware of the
photographs, Brock contends that they are irrelevant.  

We agree with the analysis in Wolfe but do not agree
that it precludes consideration of the photographs.  In Wolfe, the wife
wanted to introduce several exhibits, including a strap-on, artificial penis;
two vibrators; a vibrator-like device called a “tiger-paw”; a videotape of the
husband and his paramour engaging in sexual intercourse; still pictures from
that videotape; and several magazines containing explicit pornography or
promoting sexual promiscuity.  The wife argued that they were relevant to his
sexual practices.  Id. at 538-39.  The trial excluded the exhibits on the
grounds of relevance and unfair prejudice.  The trial court did, however, allow
counsel to question the witnesses about the items.  The husband admitted
purchasing the magazines and vibrators, making the video, and having an
adulterous affair.  The wife was allowed to testify about his sexual
misconduct.  Id. at 539-40.  The El Paso Court affirmed and noted that
the physical objects could lead to a decision on an improper or emotional basis
by the jury and that there was no harm because of the oral testimony concerning
each of the physical items.  Id. at 540.  Wolfe, therefore, does
not stand for the proposition that any sexually related evidence must have been
seen by the child before it becomes relevant.  Instead, trial courts must
carefully consider relevance and weigh the probative value of potentially
inflammatory evidence.

There was no evidence that J.A.S. had seen or was otherwise
aware of any of the photos.  But the fact that someone would post photographs
like these of oneself on an internet website has some relevance because it
bears upon their character.  The trial court could, therefore, consider the
photographs when making its best interest determination.  

Moreover, even beyond the evidence of sexual misconduct,
there was sufficient evidence to support the trial court’s best interest
finding.  The trial court could reasonably have found that Brock had filed
fraudulent tax returns, had stolen money from Stewart, had falsely acquired
credit cards in his name and then used those for her own benefit, had
fraudulently filed a name change petition, had moved numerous times in the last
few years, and had attempted to alienate J.A.S. from Stone.  If so, this would necessarily imply that the trial court also found her testimony under oath was unreliable.  The trial court could,
thus, have reasonably concluded that Brock’s life displayed a troubling pattern
of fraudulent and dishonest behavior.  While there was evidence contrary to the
trial court’s best interest finding, weighing that evidence requires a
credibility determination that we must defer to the trial court.  We cannot say
that the trial court’s best interest finding was so against the overwhelming
weight of the evidence as to be clearly wrong or unjust.  The trial court did
not abuse its discretion by finding that Stone’s requested modification was in
the best interest of J.A.S.  Brock’s second issue is overruled.  

V.  Conclusion

The order of the trial court is affirmed.

                                                                              

            

RICK STRANGE

                                                                                    JUSTICE

 

January 13, 2011

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.