# NO. 12-13-00171-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE MATTER OF THE MARRIAGE OF BRAD LESLIE JUSTICE AND REBECCA ARLENE* | *§* | *APPEAL FROM THE* |
| *JUSTICE AND IN THE INTEREST OF MORGAN MICHELLE CAROLANN JUSTICE AND BRANDON WADE* | *§* | *COUNTY COURT AT LAW* |
| *JUSTICE, CHILDREN* | *§* | *NACOGDOCHES COUNTY, TEXAS* |

*MEMORANDUM OPINION*

Appellant Rebecca Arlene Justice appeals the trial court's final decree of divorce. On appeal, Rebecca presents two issues. We reverse and render in part, and affirm in part.

### BACKGROUND

Rebecca Arlene Justice and Brad Leslie Justice were married on July 23, 1994, and are the parents of two children, Morgan, born March 26, 2002, and Brandon, born July 30, 2004. On July 8, 2011, Brad filed an original petition for divorce, requesting that he be appointed sole managing conservator, that Rebecca be appointed possessory conservator, that Rebecca be ordered to pay child support and to provide medical child support, and that the trial court divide the marital estate in a manner that the court deemed just and right. Further, Brad requested that the trial court confirm the real property located in Martinsville, Texas, as his separate property.

The final decree of divorce, signed by the trial court on October 2, 2013, granted Brad and Rebecca a divorce, appointed Brad and Rebecca as joint managing conservators of the children, and appointed Brad the primary joint managing conservator of the children with the exclusive right to designate the children's primary residence. The trial court granted Rebecca possession of the children at times mutually agreed to in advance by the parties and, in the absence of mutual agreement, in accordance with a standard possession order. Further, the trial

court confirmed that the real property located in Martinsville, Texas, was Brad's separate property. Rebecca filed a request for findings of fact and conclusions of law, but the trial court did not comply. This appeal followed.

**JOINT MANAGING CONSERVATORSHIP**

In her first issue, Rebecca argues that the trial court abused its discretion in appointing Brad as joint managing conservator with the exclusive right to determine the children's residence because it was not in the best interest of the children. She contends that there was evidence that Brad had a history or pattern of family violence, was physically and emotionally abusive, and exhibited sexual depravity in the presence of the children.

**Standard of Review**

In determining conservatorship, the best interest of the child shall be the primary consideration. TEX. FAM. CODE ANN. § 153.002 (West 2014). The trial court has wide latitude in determining the best interest of a child, and the decision of the trial court will be reversed only when it appears from the record as a whole that the court has abused its discretion. *Marriage of Stein*, 153 S.W.3d 485, 488 (Tex. App.—Amarillo 2004, no pet.). Texas courts have long recognized certain nonexclusive factors to be considered in determining the best interest of a child:

> (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent.

*See Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *Matter of Marriage of Bertram*, 981 S.W.2d 820, 822–23 (Tex. App.—Texarkana 1998, no pet.) (applying *Holley* factors for best interest determination in conservatorship proceeding).

There is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child. TEX. FAM. CODE ANN. § 153.131(b) (West 2014). A finding of a history of family violence involving the parents of the child

removes the presumption. *Id*. However, the trial court is in a better position than an appellate court to determine what is in the best interest of the child because the trial court observed the parties and witnesses, noted their demeanor, and had the opportunity to evaluate their claims. *See Martinez v. Molinar*, 953 S.W.2d 399, 403 (Tex. App.—El Paso 1997, no writ).

"Family violence" is an act that is intended to result in physical harm, bodily injury, assault, or sexual assault, or that is a threat that reasonably places the family member in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself. TEX. FAM. CODE ANN. § 71.004(1) (West 2014). Evidence of family violence determines whether a trial court may appoint the parties as joint managing conservators. *See id.* § 153.004 (West 2014). As applicable here, when making its decision about the conservatorship of the child, the trial court was required to consider evidence of the intentional use of abusive physical force by a party against the party's spouse, a parent of the child, or any person younger than eighteen years of age committed within a two year period preceding the filing of the suit or during the pending of the suit. *Id.* § 153.004(a) (West 2014). If credible evidence is presented of a history or pattern of past or present physical abuse by one parent directed against the other parent or a child, the trial court may not appoint joint managing conservators. *Id.* § 153.004(b) (West 2014). One incident of physical violence can constitute a history of physical abuse. *In re R.T.H.*, 175 S.W.3d 519, 521 (Tex. App.—Fort Worth 2005, no pet.); *In re Marriage of Stein*, 153 S.W.3d at 489.

## Analysis

In this case, the trial court did not make a finding of family violence, and, with no findings of fact on the issue of family violence, we may not presume such a finding. *See Guridi v. Waller*, 98 S.W.3d 315, 316 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Thus, we must consider the evidence to determine whether the trial court erred in appointing Brad as a joint managing conservator with the exclusive right to designate the children's residence.

Both Brad and Rebecca testified regarding two incidents that Rebecca characterized as violent. The first incident occurred in 2007 or 2008 during an argument between the parties. Brad stated that he tried to leave the house through the laundry room, but Rebecca admitted that she refused to let him leave until they resolved their dispute. Brad stated that they talked for a while, but he still intended to leave. Again, he said, Rebecca refused to let him leave. He asked her to move and let him go. Rebecca admitted telling him that he did not scare her. Brad testified

that he placed his hand on the front of Rebecca's chest, pushed her against the door, and told her that she needed to get out of his way. According to Rebecca, Brad began choking her until she almost passed out. Brad denied choking her, but admitted that he knew he had gone "too far," was upset, and apologized for his behavior. He said Rebecca forgave him and they hugged.

The second incident occurred in March 2011. Brad testified that he and Rebecca were attempting to have a discussion, but she kept looking at him and yelling "get away from me Satan." She repeated it over and over, loud enough that it eventually brought the children downstairs. Brad stated that he splashed a glass of iced tea in her face and she stopped "chanting." In contrast, Rebecca described an incident that occurred when Brad began screaming about the sexual predators in the neighborhood where she was living at the time. She stated that he lunged for her, she covered her face and prayed, and then he threw a "tumbler" of iced tea at her. Rebecca's picture of herself after the incident was admitted into evidence and shows that her hair and face were wet. The picture does not appear to show any bruises. Other than Rebecca's picture, there is no evidence showing Rebecca's condition following this incident. And there is no evidence that Rebecca was seriously injured or that Brad's actions resulted in substantial harm to Rebecca.

Wade E. French, a licensed professional counselor, performed a custody evaluation on both parents. He stated that Brad's screening and testing did not reveal any particular problem or show Brad's anger to be a significant issue. Warren Joseph McCracken, a licensed professional counselor, testified that there was nothing to indicate a history of violence or abuse, including police reports, physical evidence, photographs, or medical reports. Based on reports and letters, McCracken was not "sold" that Brad was as abusive as Rebecca presented. Moreover, he said that if Rebecca really believed that she and the children were in that much danger, she showed poor judgment by staying with Brad. Rebecca's sister and her best friend denied seeing any evidence of physical abuse, although Rebecca's sister believed she saw marks on Rebecca's arm about five or six years ago.

Even though Brad and Rebecca testified about family violence, the trial court was in a better position to evaluate their claims and believe or disbelieve them. *See Martinez*, 953 S.W.2d at 403. Although we do not take claims of family violence lightly, we cannot conclude from the record before us that the trial court abused its discretion in determining that Rebecca

4

failed to rebut the presumption that the parents should be appointed joint managing conservators of the children. *See id.* § 153.131(b).

Further, Rebecca contends there is evidence that Brad was physically and emotionally abusive, and exhibited sexual depravity in the presence of the children. At one point, Rebecca testified that Brad did not physically abuse her until they moved to Martinsville in 2010. This contradicted her earlier testimony that he abused her in 2007 or 2008. She described Brad as having a "horrible temper," and stated that he was physically aggressive, screamed at her, and threw things at her in front of the children.

Rebecca testified that she was concerned about Brad's pornography "addiction," stating that he had sexually explicit magazines and sex toys in the house. However, French did not see any type of compulsiveness in Brad connected to an addiction to pornography. Rebecca also described an incident that occurred in June 2011, after they were separated, in which Brad was lying on the bed with the children looking at pictures of her. She said that he got an erection because he sent her an email shortly afterwards telling her that he was sitting in front of the children with wet shorts.

There was significant testimony regarding an incident that occurred at the house in Converse in which Brad admitted to "mess[ing]" up the house when he discovered Rebecca had been unfaithful to him. He piled Rebecca's clothes on the curb, hosed them down with water, and drove over them. Then, he drove to the church where Rebecca and the children were worshipping. He admitted that he "failed miserably" during the divorce, did not justify his behavior, and took responsibility for his words and actions. After the police were called to the church as a result of his conduct at the house, Brad's vehicle was searched and he was charged with possession of a prohibited weapon. He described the prohibited weapon as novelty aluminum brass knuckles. He was placed on deferred adjudication community supervision for six months. There was also testimony about an accident involving Brandon in an all-terrain vehicle. Brad's mother took Brandon to the doctor the day after the incident. Rebecca alleged that Brandon suffered a broken neck, but Brandon's physician stated that the scans performed at the time did not show a fracture.

French doubted that Rebecca would be able to co-parent effectively because her willingness to negotiate, compromise, and work with someone was "pretty difficult." He stated that Rebecca believed in the "rightness" of her actions and characterized her as unstable because

of her judgment and long term thinking. There was also evidence that Rebecca disobeyed court orders to present the children after keeping them longer than her scheduled visitation, and that she was dating and living with a new boyfriend shortly after she and Brad separated. Brad testified that the children were behind in school after being homeschooled by Rebecca. A school official testified that Morgan was significantly behind her age level in reading, writing, and math, and had to be placed in a grade lower than her age level. Brad and his parents testified that Morgan was undergoing intensive tutoring to help her with school. He blamed Rebecca for the children's educational deficits. Brad was also concerned with Rebecca's religious views, which French described as "different" and "odd," but not to the point of "being symptoms of a mental illness."

French and McCracken testified that it was in the best interest of the children for them to live primarily with Brad. French stated that Rebecca did not promote a stable environment such as being responsible for the children's schooling, and McCracken believed Rebecca's decision to introduce a new boyfriend into the children's lives soon after the parents separated was not in the best interest of the children. There was also testimony that Brad's parents were a significant influence in the children's lives, paying for Morgan's tutoring, employing Brad, and keeping the children three nights a week while Brad was going to school.

In its letter order and divorce decree, the trial court ordered that none of the parties keep or possess any sexually explicit material while the children were present, and that none of the parties have nonrelated guests of the opposite sex spend the night when the children were present. Further, the trial court ordered that Brad receive parenting and/or other counseling as determined by McCracken and address any sexual issues that were raised in the evidence. Finally, the trial court noted that "there was plenty of bad evidence against both parents," but that the difference was Brad's parents and their proximity to the children.

The trial court was in a better position than an appellate court to determine what was in the best interest of the children regarding Rebecca's claims that Brad was physically and emotionally abusive, and exhibited sexual depravity in the presence of the children. The trial court observed the parties and witnesses, noted their demeanor, and had the opportunity to evaluate their claims. *See Martinez*, 953 S.W.2d at 403. From the evidence in the record, we cannot say that the trial court abused its discretion in granting Brad the exclusive right to determine the children's residence. Accordingly, we overrule Rebecca's first issue.

6

## PROPERTY DIVISION

In her second issue, Rebecca contends that the trial court abused its discretion by making a manifestly unjust and unfair property division. She argues that the trial court awarded all significant and valuable community property to Brad, i.e., the family home, with no credit to her, and awarded her only the personal property in her possession.

**Applicable Law**

In a decree of divorce, a court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001(West 2006). We review a trial court's division of property under an abuse of discretion standard. *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied); *see also Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.). A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision. *Garza*, 217 S.W.3d at 549; *Moroch*, 174 S.W.3d at 857. Moreover, we should reverse a court's division of property only if the error materially affects the court's just and right division of the property. *Henry v. Henry*, 48 S.W.3d 468, 475 (Tex. App.—Houston [14th Dist.] 2001, no pet.). However, once reversible error affecting the "just and right" division of the community estate is found, an appellate court must remand the entire community estate for a new division. *Sheshtawy v. Sheshtawy*, 150 S.W.3d 772, 780 (Tex. App.—San Antonio 2004, pet. denied) (quoting *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985)).

Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a) (West 2006). Any doubt as to the character of property should be resolved in favor of the community estate. *Sink v. Sink*, 364 S.W.3d 340, 345 (Tex. App.—Dallas 2012, no pet.). The burden of proof necessary to establish that property is separate property is clear and convincing evidence. TEX. FAM. CODE ANN. § 3.003(b). Clear and convincing evidence means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2014).

A spouse's separate property consists of the property acquired by the spouse during marriage by gift, devise, or descent. *Id.* § 3.003(a); *see also* TEX. CONST. art. XVI, §15. A gift is a transfer of property made voluntarily and gratuitously, without consideration. *In re Marriage*

*of Skarda*, 345 S.W.3d 665, 671 (Tex. App.—Amarillo 2011, no pet.). The existence of a gift requires sufficient proof of (1) intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *Id.* The intent of the donor is the principal issue in determining whether a gift was made. *Id.*

## Analysis

In its letter order and final decree, the trial court found that the residence in Martinsville was a gift to Brad and therefore was Brad's separate property. The evidence at trial supports the trial court's decision. Brad testified that his uncle, Ronald Justice, informed him that the family home was for sale in Martinsville. Ronald paid cash for the house, telling Brad that he did not want him to worry about the paperwork and the bank. The warranty deed shows that only Brad was named as the grantee. At the time, Brad said, Ronald told him to wait until after Christmas 2010 to arrange payments. However, Ronald later told him to consider the house as part of his inheritance. Ronald agreed with Brad's testimony and confirmed that the house was a gift, not a loan, to Brad only. He testified that he bought the house for Brad because it adjoined family property. Rebecca denied that they owed anything to Ronald for the house, and admitted that she was not privy to any agreement between Brad and Ronald. From this evidence, Brad showed, by clear and convincing evidence, that Ronald intended to give him the Martinsville residence, that Ronald paid cash for the house out of his own funds, and that Brad accepted the property. *See In re Marriage of Skarda*, 345 S.W.3d at 671. Therefore, the trial court did not abuse its discretion in determining that the Martinsville residence was Brad's separate property.

The trial court also awarded Brad, as his separate property, a 2008 Dodge Ram pickup truck and his personal property. Rebecca was awarded, as her separate property, a 2012 Kia Soul, and her personal property described in an exhibit to the decree. However, there was evidence that Brad and Rebecca had additional community property including stocks from a company that Brad worked for in the past, a Suburban, and a 1967 restored Chevrolet pickup. The evidence at trial showed that the stocks were not valued, that neither party knew the location of the Suburban, and that the 1967 Chevrolet had an indeterminate value of between $5,000 and $15,000, depending upon which party valued it. None of this property was divided by the divorce decree. Therefore, the trial court's determination to divide only the two vehicles awarded to each party, the Martinsville residence, and the personal property of the parties does not comport with the evidence.

Because the trial court failed to mention or divide all of the community property that may have affected the just and right division of the parties' estate, we conclude that the trial court abused its discretion. *See* **Demler v. Demler**, 836 S.W.2d 696, 699 (Tex. App.—Dallas 1992), *disapproved on other grounds*, **Dallas Mkt. Ctr. Dev. Co. v. Liedeker**, 958 S.W.2d 382, 386-87 (Tex. 1997) (per curiam); **Gutierrez v. Gutierrez**, 643 S.W.2d 786, 788 (Tex. App.—San Antonio 1982, no writ). Accordingly, we sustain Rebecca's second issue.

## DISPOSITION

We *affirm* the trial court's judgment granting the Justices' divorce, appointing Brad and Rebecca as joint managing conservators of the children, and appointing Brad as the primary joint managing conservator of the children with the exclusive right to designate the children's primary residence. We *reverse* that portion of the final decree of divorce disposing of and dividing their community property and *remand* the cause for further proceedings consistent with this opinion. *See* **Roberts v. Roberts**, 999 S.W.2d 424, 442 (Tex. App.—El Paso 1999, no writ).

**BRIAN HOYLE**
Justice

Opinion delivered October 30, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

9



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 30, 2014**

**NO. 12-13-00171-CV**

### IN THE MATTER OF THE MARRIAGE OF BRAD LESLIE JUSTICE
### AND REBECCA ARLENE JUSTICE AND IN THE INTEREST OF MORGAN
### MICHELLE CAROLANN JUSTICE AND BRANDON WADE JUSTICE, CHILDREN

Appeal from the County Court at Law

of Nacogdoches County, Texas (Tr.Ct.No. C11-27,458)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, because it is the opinion of this court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this court that the trial court's judgment disposing of and dividing the parties' community property be **reversed** and the case be **remanded for further proceedings** consistent with this opinion; that in all other respects, the judgment of the trial court is **affirmed**; and that this decision be certified to the court below for observance.

It is further ORDERED that the costs of court incurred in this appellate court be assessed one-half against Appellant, **REBECCA ARLENE JUSTICE**, and one-half against Appellee, **BRAD LESLIE JUSTICE**.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*