# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-14-00019-CV

---

**Daniel Caldwell, Appellant**

**v.**

**Jennifer Garfutt, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 4 OF WILLIAMSON COUNTY
NO. 09-3577-FC4, HONORABLE JOHN MCMASTER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

In this appeal from a suit to modify the parent-child relationship, Daniel Caldwell, acting pro se, appeals from the trial court's order that removed the parties as joint managing conservators of their five-year-old child, appointed Jennifer Garfutt sole managing conservator, and ordered that Caldwell would have only phone access to the child at specified times each month. For the reasons that follow, we affirm the trial court's order.

## BACKGROUND

The parties were divorced in 2010. *See Caldwell v. Goodfellow Caldwell*, No. 03-10-00292-CV, 2012 WL 5476848, at *1 (Tex. App.—Austin Nov. 8, 2012, pet. denied) (mem. op.). In the final decree of divorce, the trial court appointed the parties joint managing conservators of their minor child and ordered Caldwell's possession of the child to be pursuant to

a standard possession order modified by the parties. *See id.* Caldwell appealed the final decree of divorce, and this Court affirmed the decree in November of 2012. *See id.*

In March 2014, this Court also affirmed in part, dismissed in part, and denied mandamus relief to the extent Caldwell requested such relief as to a subsequent order by the trial court in which the trial court held Caldwell in contempt for failure to pay child support, health insurance premiums, and uninsured medical expenses; granted judgment for arrearages; suspended commitment; and modified the divorce decree. *See Caldwell v. Garfutt*, No. 03-12-00696-CV, 2014 WL 1018089, at *1 (Tex. App.—Austin Mar. 12, 2014, no pet.) (mem. op.) (affirming in part, dismissing in part), 2014 WL 1576871, at *1–2 (Tex. App.—Austin Apr. 17, 2014, no pet.) (supplemental op. on reh'g) (addressing issues to extent that they requested mandamus relief and denying request). The trial court signed the order that was the subject of that appeal in October 2012.

This appeal is from Garfutt's suit to modify the parent-child relationship, which she filed on June 17, 2013. *See* Tex. Fam. Code § 156.001 (authorizing court with continuing, exclusive jurisdiction to modify orders providing for conservatorship, support, possession, or access of child). In addition to seeking to modify the parent-child relationship, she also sought injunctive relief against Caldwell. *See id.* § 156.006 (authorizing temporary orders). The trial court granted a temporary restraining order against Caldwell and held a hearing on Garfutt's request for temporary orders in July 2013. Caldwell and Garfutt both testified at the hearing. Garfutt testified about the reasons for her concerns as to the child's safety when the child was in Caldwell's care and for initiating the suit. She testified that, beginning in June, the child's daycare provider had advised her

2

that the child "was displaying signs that weren't appropriate for his age for development," such as "poking [a doll] in the butt and laughing at it and [the child] grabbed another child's penis." She also testified about an incident in which a toy was entirely lodged in the child's anus while the child was in Caldwell's care.

Caldwell admitted to the toy incident—explaining that the toy incident was a "freak" accident that happened when the child was taking a "bubble bath"—and admitted to many of the other actions that were concerning to Garfutt.[1] Those actions included that Caldwell and the child stayed in the garage of a house where a registered sex offender was living; that Caldwell had provided Garfutt with over ten different addresses where he was residing, some of which Garfutt was unable to verify; that Caldwell had transported the child by bicycle in an unsafe manner; that Caldwell posted a picture of the child in an advertisement on the Internet, as well as other postings referencing the child; and that the child and Caldwell slept in the same bed. The exhibits included

---

[1] In his briefing to this Court, Caldwell describes the toy incident as follows:

> On Saturday night of 15 June 2013, Daniel reported to Jennifer that [the child] had sat down suddenly in the bathtub and had the freak accident of lodging one of the cylinder-like little person toys with a spherical head (measured 1_7/8" tall by 15/16" round) in his butt, and that she would want to know, but that he pooped it out and was fine now. On Sunday 16 June, Jennifer insisted that Daniel immediately take [the child] to the emergency room, to which Daniel responded that she could come get [the child] if she was that concerned.

After Garfutt picked the child up, she took the child to the emergency room. According to Garfutt, she contacted Austin Regional Clinic, and the clinic informed her "that [the child] needed to immediately be taken to Dell Children's Emergency Center." The child was examined at the emergency center and determined not to have injuries from the incident.

3

photographs of Caldwell transporting the child on the bicycle,[2] copies of emails between the parties in which Caldwell provides various addresses, and copies of postings on the Internet, including the advertisement on the Craigslist "room/share wanted" page.[3]

Following the hearing, the trial court entered temporary orders. The trial court found that Caldwell "pose[d] an immediate danger to the physical health and safety of the child"; ordered that Caldwell be excluded from possession of the child; and enjoined Caldwell from, among other actions, communicating with the child or Garfutt or coming within 300 yards of either of them. The trial court also referred the case to the Texas Department of Family and Protective Services because there was "evidence of abuse and/or neglect."

The trial court held another hearing in August 2013. At that hearing, the child's therapist since June 2013 and an investigator with the Department testified. The child's therapist testified that the child told her that Caldwell had thrown the child into the bathtub when Caldwell was angry and Caldwell came to the child's school on another occasion and talked to the child through a fence.[4] The investigator testified that the Department had closed its investigation, ruling

---

[2] The photographs show Caldwell riding the bicycle with the child, who was four years old at the time, strapped to Caldwell's legs with a belt while facing Caldwell and holding on to Caldwell's shoulders to remain upright. Neither is wearing a helmet. Garfutt took the photographs and reported the incident to the police. Caldwell and the child were riding toward the intersection of two highways.

[3] The advertisement posted on Craigslist is titled "single dad seeking place for visitation (round rock)."

[4] The therapist testified:

Well, [the child] said his poppa came to the school and talked to him through the fence and told him, "Even though your mommy says no and even though the police say no, I came to see you." And then the child whispered and said, "He told me not

4

out the allegations, but that they "still have concerns, and there's a risk of concern for [the child]" and that the Department was looking to Garfutt, "being a protective parent."[5] The investigator also testified about the recommendations in Caldwell's psychological evaluation and recommended starting supervised visits between Caldwell and the child, pending compliance with the recommendations in the psychological evaluation.[6] At the conclusion of the hearing, the trial court granted Caldwell supervised visits with the child through LifeSteps Families in Transition. Caldwell had a few visits with the child at LifeSteps before LifeSteps declined to continue to host any further visits based on Caldwell's conduct.

The final hearing on Garfutt's suit to modify occurred in October 2013. By that time, the parties had reached a mediated settlement on child support. The witnesses at the final hearing included the program director for LifeSteps, Garfutt, and Caldwell. The program director for LifeSteps testified about Caldwell's rule violations and the reasons that LifeSteps decided to decline hosting any further visits between Caldwell and the child. Garfutt testified about her continued concerns about the child's safety and asked to be appointed sole managing conservator and to modify

---

to tell you anything good."

[5] The investigator explained that the Department "typically provides services to families when children are not safe with either parent. At this point, we believe that [the child] is safe with Ms. Garfutt in her home, and she's safe and is protective of [the child] regarding any ongoing concerns we would have with Mr. Caldwell."

[6] The psychological evaluation reflects that the evaluation occurred on August 14, 2013, and that Caldwell had been previously diagnosed with Asperger's Syndrome, major depressive disorder, and narcissistic tendencies. The identified concerns in the evaluation included Caldwell's "experiencing of some grandiosity," "instability," "impulsivity," "sporadic work history and frequent job changes," lack of social and interpersonal skills, and lack of transportation. The recommendations included that Caldwell participate in group, family, and individual therapy, and that he be monitored and assessed over time "for diagnostic clarity and treatment planning."

Caldwell's access to the child to phone access at specified times. Caldwell testified about the visits at LifeSteps and disputed that he had violated any rules. The exhibits included the monitor's notes from the supervised visits at LifeSteps. At the time of the final hearing, Caldwell had not complied with the recommendations in the psychological evaluation and had not had a psychiatric evaluation.

In January 2014, the trial court signed the order granting Garfutt's suit to modify the parent-child relationship. In the order, the trial court found that "credible evidence exists that Daniel James Caldwell has a history of past or present child neglect" and that "the following orders are in the best interest of the child." The trial court appointed Garfutt sole managing conservator; appointed Caldwell possessory conservator; modified Caldwell's access to the child to phone access at specified times each month; and permanently enjoined him from, among other actions, coming within 300 feet of Garfutt's residence, her place of employment, or the child's school or day-care facility.[7] The trial court also entered findings of fact and conclusions of law. This appeal followed.

## STANDARD OF REVIEW

A trial court may modify conservatorship and possession if the petitioning parent shows that the circumstances of the child, a conservator, or some other affected party "have materially and substantially changed" and that modification would be in the best interest of the child. Tex. Fam. Code § 156.101. When a trial court makes a decision modifying conservatorship, we review that decision under an abuse-of-discretion standard. *See Gillespie v. Gillespie*,

---

[7] The order states that Caldwell "shall have phone access to the child on the first, third and fifth Sundays of each month, beginning at 6:00 p.m." Garfutt was ordered to make the child available for the phone calls and "to allow the phone calls to continue for so long as reasonabl[y] practicable."

644 S.W.2d 449, 451 (Tex. 1982) (giving trial court "wide latitude in determining the best interests of a minor child"); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied) (reviewing trial court's decision to modify conservatorship under abuse of discretion standard). The trial court, the observer of "the witnesses' demeanor and personalities," does not abuse its discretion if some substantive and probative evidence supports the trial court's decision. *Zeifman*, 212 S.W.3d at 587. Challenges to the sufficiency of the evidence are not independent grounds of error but are relevant when accessing whether the trial court abused its discretion. *Id*. We ask first whether the trial court had sufficient information on which to exercise its discretion and second whether it erred in applying its discretion. *Id*. at 588.

## ANALYSIS

Caldwell presents 14 issues on appeal.[8] Caldwell, however, generally fails to support his issues with substantive arguments or citations to authorities or the record. *See* Tex. R. App. P. 38.1(i) (requiring "argument for the contentions made, with appropriate citations to authorities and to the record"); *see, e.g.*, *Davis v. American Express Bank*, No. 03-12-00564-CV,

---

[8] Pending before this Court are Caldwell's "motion to substitute and replace" and "motion for rehearing seeking to replace or substitute in order to supplement." In both motions, Caldwell seeks to substitute his "Amended Brief Seeking Mandamus Relief (or Appellant's Reply and Supplemental Brief)" that this Court received in September 2015, in place of his brief that this Court received on May 7, 2015. Although we read Caldwell's pro se briefing liberally, we may not give him any procedural advantage over a party represented by counsel. *See Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *In re N.E.B.*, 251 S.W.3d 211, 211–12 (Tex. App.—Dallas 2008, no pet.). Caldwell's brief was initially due in August 2014, but he sought and was granted extensions of time to file his brief. By order dated April 24, 2015, we dismissed his pending motions for extension and ordered that his deadline to file his brief was May 7, 2015. We also advised him that no further extensions would be granted and that we would dismiss the appeal for want of prosecution if he failed to file a brief by that date. Given this procedural background, we deny the pending motions to substitute.

2014 Tex. App. LEXIS 9662, at *7 (Tex. App.—Austin Aug. 29, 2014, no pet.) (mem. op.) (noting that "[a]ppellate issues must be supported by argument and authority, and if they are not so supported, they are waived" and concluding pro se appellant waived issue by failing to support it by argument and authority); *Lee v. Kaufman*, No. 03-10-00148-CV, 2011 Tex. App. LEXIS 6969, at *9–10 (Tex. App.—Austin Aug. 26, 2011, no pet.) (mem. op.) (finding issue waived that was not supported "with arguments, legal authority, or citations to the record"). "[P]ro se appellants are held to the same standard as parties represented by counsel to avoid giving unrepresented parties an advantage over represented parties." *Stewart v. Texas Health & Human Servs. Comm'n*, No. 03-09-00226-CV, 2010 Tex. App. LEXIS 9787, at *2 n.1 (Tex. App.—Austin Dec. 9, 2010, no pet.) (mem. op.). Holding Caldwell to this standard, we conclude that he has waived his issues by failing to support them with substantive arguments or appropriate citations to authorities and the record. *See* Tex. R. App. P. 38.1(i). Nonetheless, we will attempt to address his issues as best as we can. *See Stewart*, 2010 Tex. App. LEXIS 9787, at *2 n.1 (addressing pro se appellant's "complaints as best we can").

*Temporary Orders*

In his first two issues, Caldwell appears to be challenging the trial court's temporary restraining order, contending that the trial court abused its discretion in granting it under Texas Family Code section 262.102(a). *See* Tex. Fam. Code § 262.102(a) (authorizing emergency order to take possession of child in suit brought by governmental entity). He also cites other sections of chapter 262, arguing that "reasonable efforts" were not made to prevent the removal of the child from his care and that he should have been advised of his right to an attorney due to indigence. *See*

*id.* §§ 262.102(d) (requiring notice of right to be represented by attorney), .201 (requiring adversary hearing), .205 (addressing hearing when child is not in possession of governmental entity). The cited sections of the Family Code, however, address procedures in suits brought by a governmental entity and, thus, are not applicable here. *See id.* § 262.001(a) (authorizing governmental entity to "file a suit affecting parent-child relationship requesting an order or take possession of a child without a court order as provided by this chapter"). Further, any complaints about the temporary orders became moot once the trial court entered its final order. *See In re T.D.M.C.*, No. 12-03-00300-CV, 2005 WL 1000578, at *3 (Tex. App.—Tyler Apr. 29, 2005, no pet.) (mem. op.) (complaints about temporary orders are moot after final order entered). We overrule Caldwell's first and second issues.

*Section 161.001 of the Family Code*

In his third issue, Caldwell contends that the trial court's finding that he "has a history or pattern of past or present child neglect" was contrary to section 161.001 of the Family Code. *See* Tex. Fam. Code § 161.001 (addressing involuntary termination of parent-child relationship). The final order, however, does not terminate his parental relationship but appoints him possessory conservator. Thus, section 161.001 does not apply here. *See id.* We overrule Caldwell's third issue.

*Section 153.258 of the Family Code*

In his fourth issue, Caldwell argues that the trial court abused its discretion by failing to comply with section 153.258 of the Family Code. *See id.* § 153.258. Section 153.258 requires a trial court to "state in the order the specific reasons for the variance from the standard [possession] order" if requested to do so "by written request made or filed with the court not later than 10 days

9

after the date of the hearing or on oral request made in open court during the hearing." *See id*. Caldwell, however, did not refer the trial court to section 153.258 until more than 10 days after the final hearing in October 2013. Further, as to his request for findings of fact and conclusions of law under rule 297 of the Texas Rules of Civil Procedure that he filed on October 21, 2013, the trial court signed and filed findings of fact and conclusions of law on January 17, 2014. *See* Tex. R. Civ. P. 297 (addressing when trial court should file findings of fact and conclusions of law when they are timely requested); *Pursley v. Ussery*, 982 S.W.2d 596, 599 (Tex. App.—San Antonio 1998, pet. denied) (deeming prematurely filed request for findings of fact and conclusions of law filed on date judgment signed). We overrule Caldwell's fourth issue.

*Texas Rule of Civil Procedure 297*

In his fifth issue, Caldwell argues that the trial court failed to "cause a copy of its findings and conclusions to be mailed to each party in the suit" as required under rule 297 of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 297. As stated above, the trial court's findings of fact and conclusions of law were signed and filed on January 17, 2014, and the record reflects that Caldwell was served with a copy of Garfutt's proposed findings of fact and conclusions of law on January 14, 2014. Caldwell also does not cite the record or provide any authority that would support his contention that the trial court did not comply with rule 297 or appellate relief even if the trial court did not comply. Further, the record does not reflect that Caldwell raised this issue with the trial court. *See* Tex. R. App. P. 33.1(a) (generally requiring complaining party to show complaint was timely and sufficiently raised before trial court and that court ruled on complaint or refused to rule on complaint). We overrule Caldwell's fifth issue.

10

*Challenged Findings of Fact*

In his sixth issue, Caldwell challenges the trial court's best interest findings; its finding that "good cause exists to award [Garfutt's attorney] judgment . . . for attorney's fees, expenses, and costs"; and its finding that a permanent injunction should be granted. The trial court found that it was not in the best interest of the child for Caldwell to have possession pursuant to the standard possession order and that it was in the child's best interest for Garfutt to be appointed sole-managing conservator, to have the exclusive right to designate the child's primary residence, to have possession of the child at all times, and to have exclusive rights and duties as to the child, *see* Tex. Fam. Code § 153.132 (listing rights and duties of parent appointed sole managing conservator), and for Caldwell to have phone access at specified times.

Based on our review of the record and taking into account applicable presumptions under the Family Code, we cannot conclude that the trial court abused its discretion in its granted relief or in making its best interest findings. *See Zeifman*, 212 S.W.3d at 587; *see also* Tex. Fam. Code §§ 153.004(b) (precluding court from appointing joint managing conservators "if credible evidence is presented of a history or pattern of past or present child neglect, or physical or sexual abuse by one parent" directed against child), .131(b) ("It is a rebuttable presumption that the appointment of the parents of a child as joint managing conservators is in the best interest of the child."), .134 (listing factors to consider in determining whether appointment of parents as joint managing conservators is in child's best interest), .252(2) ("In a suit, there is a rebuttable presumption that the standard possession order . . . is in the best interest of the child."), .253 (allowing court to render order that does not follow standard possession order when it is shown that

11

standard possession order "unworkable or inappropriate"); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing non-exclusive factors for making best interest determination).

The evidence at the hearing was undisputed that the parents' relationship had deteriorated. *See Doyle v. Doyle*, 955 S.W.2d 478, 480 (Tex. App.—Austin 1997, no pet.) (reviewing evidence in light of factors in Family Code section 153.134 and concluding that presumption for joint managing conservatorship rebutted in part based on parents' deteriorating ability to cooperate); *Martinez v. Molinar*, 953 S.W.2d 399, 402–03 (Tex. App.—El Paso 1997, no writ) (concluding that appointment of one parent as sole managing conservator appropriate based in part on lack of agreement and cooperation between parents); *see also* Tex. Fam. Code § 153.134(a)(2) (listing ability of parents to "reach shared decisions in the child's best interest" among factors to be considered). Additionally, there was evidence to support findings that Caldwell was unable to safely or appropriately take care of the child, that he was mentally unstable, and that his past actions had placed the child at risk of harm, *see* Tex. Fam. Code § 153.004(b) (precluding appointment of joint managing conservators when "history or pattern of past or present child neglect"), and that Garfutt was an appropriate and protective parent. The trial court could have credited this evidence to conclude that the presumption for joint managing conservatorship had been rebutted and that it was in the best interest of the child for Garfutt to be appointed sole managing conservator with possession of the child and with the exclusive rights and duties under section 153.132 of the Family Code, including designating the child's primary residence. *See id.* §§ 153.132 (including, among rights of parent appointed sole managing conservator, "right to designate the primary residence of the child"), .134(a)(1), (2) (listing "whether the physical, psychological, or

12

emotional needs and development of the child will benefit from the appointment of joint managing conservators" and "ability of the parents to give first priority to the welfare of the child" among factors to be considered).

The trial court also could have credited the evidence that Caldwell had failed to follow the recommendations in the psychological evaluation, that he had violated terms of the temporary orders, that the Department had expressed concerns about Caldwell in the past and going forward, and that LifeSteps had stopped hosting supervised visits based on Caldwell's conduct, as well as the parties' testimony, to conclude that the standard-possession-order presumption had been rebutted and that modifying Caldwell's access to phone access was in the best interest of the child.[9] *See id.* § 153.253 (allowing court to render order that does not follow standard possession order

---

[9] At a hearing in January 2014 on Garfutt's motion to sign the modification order, the trial court specifically found:

The Court specifically finds that on many occasions this Court stepped in and tried everything I could possibly do to try and put Mr. Caldwell in a position where he could have regular visits with his child. Every time this Court attempted to place some creative idea or some new way to where Mr. Caldwell could step in line and start exercising visitation, it failed. And not only did it fail, it failed on numerous occasions spectacularly. There have been instances throughout the course of this case where this child was placed in what I feel imminent physical danger. There was photographic evidence of that in this case. There were instances where I had supervised visitation with groups that I have never had them ever ask me to please not put them in the position of having them supervise those visits. And yet we had people here testifying that the visits did not—that the visits did not go—and, quite frankly, in the eight years that I have been a judge, not one time has that ever occurred. Except with Mr. Caldwell's case. There have been numerous times where I have tried to get Mr. Caldwell to step in line, get counseling, all of which have failed. It is this Court's opinion, based on years of exposure to this case, that until Mr. Caldwell addresses certain issues, that his possession unsupervised of this child poses a serious and immediate threat to this child's physical and emotional safety.

13

when it is shown that standard possession order "unworkable or inappropriate"); *Holley*, 544 S.W.2d at 371–72 (listing "emotional and physical danger to the child now and in the future," stability of home, and "acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one" among non-exclusive factors for making best interest determination); *cf. Fish v. Lebrie*, No. 03-09-00387-CV, 2010 WL 5019411, at *10–11 (Tex. App.—Austin Dec. 10, 2010, no pet.) (mem. op.) (concluding that trial court abused discretion in ordering "complete denial of access" and remanding for trial court "to consider what amount and kind of access would be appropriate").

This evidence also supports the trial court's injunctive relief. *See Peck v. Peck*, 172 S.W.3d 26, 35 (Tex. App.—Dallas 2005, pet. denied) (noting Family Code's failure to speak to permanent injunctions, but collecting cases in which permanent injunctive relief was granted and concluding that trial court did not abuse discretion in granting permanent injunctive relief); *see also* Tex. Fam. Code § 156.004 (applying Rules of Civil Procedure to suit for modification under chapter 156). Further, this evidence, along with the testimony by Garfutt's attorney as to fees, expenses, and costs, supports the award of a money judgment to Garfutt's attorney. *See* Tex. Fam. Code §§ 106.001 (authorizing court to award costs in suit affecting parent-child relationship), .002 (authorizing court to render judgment for reasonable attorney's fees and expenses to be paid directly to attorney). We overrule Caldwell's sixth issue.

*Waiver of Jury Trial*

In his seventh issue, Caldwell argues that the trial court incorrectly found that a "jury was waived." The record reflects, however, that he did not request a jury. *See* Tex. R. Civ. P. 216

14

(request and fee for jury trial), 217 (oath of inability to deposit jury fee). Since Caldwell did not request a jury, the trial court correctly found that a jury was waived. We overrule his seventh issue.

*Child Support*

In his eighth issue, Caldwell argues that the "court's order 'finds that the parties have agreed to the terms of child support set forth below' . . . despite objection that those terms do not, in-fact, conform to the agreement of the parties." He, however, does not explain how the terms set forth in the order do not conform with the parties' agreement on child support. Without this explanation, we have nothing to review and overrule his eighth issue.

*Trial Court's Declarations*

In his ninth issue, Caldwell argues that the trial court "repeatedly made findings contrary to the record, which portray [Caldwell] as a vexatious litigant" and that the trial court abused its discretion by "stating untrue declarations." Caldwell then lists statements by the trial court from different hearings.[10] Caldwell, however, has not cited, and we have not found, authority that would support granting Caldwell appellate relief based on the trial court's statements on the record at the various hearings. We overrule Caldwell's ninth issue.

---

[10] The listed statements concerned the number of hearings in general and set by Caldwell, the trial court's attempts to get Caldwell "to step in line, get counseling," whether the county prosecutes perjury, and notification to Caldwell of the status of the case.

*Sections 153.001 and 153.193 of Family Code*

In his tenth and eleventh issues, Caldwell argues that the trial court abused its discretion by violating sections 153.001 and 153.193 of the Family Code. *See* Tex. Fam. Code §§ 153.001 (stating that public policy of state to "assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child" and "encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage"), .193 ("The terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child."). For the reasons stated above as to Caldwell's sixth issue in which he challenges the trial court's best interest findings, we overrule his tenth and eleventh issues.

*Bias and Recusal*

In his twelfth and thirteenth issues, Caldwell contends: "At the first hearing, the court demonstrated prejudicial bias against [him] contrary to its duty to provide fair trial" and that the trial judge erred by failing to recuse himself. *See* Tex. R. Civ. P. 18b. To support his arguments, Caldwell cites various rulings by the trial court concerning Caldwell's allegations that Garfutt had committed perjury and that she was not credible. Caldwell, however, failed to comply with the procedure in rule 18a for the recusal of a trial judge. *See* Tex. R. Civ. P. 18a (requiring verified motion to be filed, asserting one or more grounds listed in rule 18b, and not "based solely on the judge's ruling in the case"). Thus, Caldwell has not preserved these issues for our review. *See Barron v. State Attorney Gen.*, 108 S.W.3d 379, 382 (Tex. App.—Tyler 2003, no pet.) (noting that

procedural requisites for recusal were mandatory and that "party who fails to conform waives his right to complain of a judge's failure to recuse himself"). We overrule his twelfth and thirteenth issues.

*2010 Divorce Decree*

In his fourteenth issue, Caldwell complains about the trial court's 2010 final divorce decree, including the division of parental rights and the marital estate. *See Caldwell*, 2012 WL 5476848, at *1 (affirming final decree). "[D]ivorce decrees and judgments are not vulnerable to collateral attack." *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009). "Errors other than lack of jurisdiction over the parties or the subject matter render the judgment voidable and may be corrected only through a direct appeal." *Id.* (citing *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003)). This Court affirmed the final decree in a prior appeal and, therefore, Caldwell may not collaterally attack the decree in this appeal. *See id.*; *Reiss*, 118 S.W.3d at 443. On this basis, we overrule Caldwell's fourteenth issue.

## CONCLUSION

Having overruled Caldwell's issues, we affirm the trial court's order.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   January 7, 2016

17